# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

PATSY DRU MOSES,                    )
                                    )
              Plaintiff,            )
                                    )
      v.                            )          Case No. CIV-10-489-SPS
                                    )
MICHAEL J. ASTRUE,                  )
Commissioner of the Social          )
Security Administration,            )
                                    )
              Defendant.            )

## OPINION AND ORDER

The claimant Patsy Dru Moses requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and the case is REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]"  42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A).

Social security regulations implement a five-step sequential process to evaluate a

disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision

to two inquiries: whether the decision was supported by substantial evidence and whether

correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th

Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'"

*Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v.

NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th

Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the

Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born September 25, 1948, and was sixty years old at the time of the administrative hearing. (Tr. 25-26, 107). She graduated high school, completed one year of college, and has worked as a licensed practical nurse, teacher's aide II, postal clerk, and counter worker. (Tr. 38-39, 135). The claimant alleges that she has been unable to work since June 3, 2007, due to degenerative arthritis, heel spurs, anxiety, depression, macular degeneration, varicose veins, and vision problems. (Tr. 130).

## Procedural History

On December 6, 2007, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Osly F. Deramus conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated September 15, 2009. (Tr. 12-21). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) perform sedentary work as defined in 20 C.F.R. § 404.1567(a), *i. e.*, the claimant could lift 10 pounds occasionally

and frequently, and stand/walk/sit for six hours in an eight-hour workday. Additionally, the ALJ limited the claimant to only occasionally stooping, never climbing stairs, ladders or driving, and avoiding exposure to heights and dangerous machinery, and further noted that the claimant's decreased visual acuity only allowed her to read within 10 inches of a document. (Tr. 16). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the regional and national economies with very little, if any, vocational adjustment, *e. g.*, admissions clerk. (Tr. 29).

## Review

The claimant contends that the ALJ erred: (i) by failing to discuss a Third Party Function Report, and (ii) by failing to conduct a proper credibility analysis. The Court finds these contentions persuasive, and the Commissioner's decision must therefore be reversed and the case remanded for further proceedings.

The ALJ found that the claimant had the severe impairments of arthritis, lower extremity varicose veins, and macular degeneration. (Tr. 14). According to the medical evidence, the claimant was treated for cellulitis in her right eye on February 24, 2006, for which she was prescribed medication. (Tr. 184). Dr. Robert Schneider treated the claimant on December 21, 2006, for her arthritis and foot pain. He found that the foot pain was likely due to her shoe wear but they would consider other options if she was not improving in three weeks. (Tr. 186). A vision examination on January 2, 2007, revealed that the claimant has, *inter alia*, astigmatism and macular degeneration. (Tr. 190). A state consultative examiner determined that she had less than the full range of motion in

her lumbosacral spine, cervical spine, hands, fingers, wrists. He assessed the claimant with degenerative arthritis of the lumbosacral spine, ankles, knees, hands, and shoulders (by history), as well as varicose veins and macular degeneration. (Tr. 205-208, 211).

The claimant's daughter Adelia Williams completed a Third Party Function Report. (Tr. 137-144). Ms. Williams stated that her mother's daily activities included attempting to clean the house, but struggling to do so because her feet, shoulder, arm, and hands hurt. (Tr. 137). Additionally, Ms. Williams stated that the claimant occasionally watches grandchildren who are "old enough to do for themselves," so that the claimant only "has to make sure [they do] not get into much." (Tr. 138). Ms. Williams stated that her mother used to sew, crochet, paint, shop, and work, but does none of those things now; that her pain level affects her ability to sleep and be comfortable at night; and that her limitations mean that it takes her longer to complete her personal care. (Tr. 138, 141). Ms. Williams further stated that the claimant needs no reminders to take medications and is able to prepare her own meals, but now she is considerably slower at performing these tasks, and that she can pay attention for a long time if she is reading. (Tr. 139-142). Ms. Williams stated that the claimant only goes out when she needs to and that she can drive herself but limits that to daylight due to her vision problems. (Tr. 140). She also stated that her mother does not handle authority figures or confrontation well. (Tr. 143).

At the administrative hearing, the claimant testified that she had quit her most recent job because she struggled with standing too long due to her varicose veins and was plagued by her vision problems. (Tr. 29). She testified that she can stand approximately

ten minutes before she has to sit and elevate her feet, and she can sit approximately fifteen minutes before she has to elevate her feet. (Tr. 30-31). She also testified that she has degenerative arthritis in her hands, but that she does not see a doctor regularly for any of her impairments because she does not have the money or insurance. (Tr. 31-32). Additionally, she stated that her vision problems require that she be within inches of something in order for her to see it, and that her macular degeneration is getting worse. (Tr. 32-33). Further, she stated that she did not believe she could return to any of her past jobs, and that her overall condition has gotten worse. (Tr. 34). She also stated that she believed she was depressed due to her physical limitations. (Tr. 35).

In his written decision, the ALJ referred to the claimant's testimony and summarized the medical evidence, including the opinions of consultative examiners and state reviewing physicians, but did not mention the Third Party Function Report. (Tr. 17-19). The ALJ found that the claimant's allegations of disabling symptoms were not credible, and that she had submitted no records "indicative of a disabling musculoskeletal impairment." (Tr. 18).

Deference must be given to an ALJ's credibility determination unless there is an indication that the ALJ misread the medical evidence taken as a whole. *See Casias,* 933 F.2d at 801. Further, an ALJ may disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *See Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. A credibility analysis "must contain

'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *4.

The specific reasons given by the ALJ for finding that the claimant's subjective complaints were not credible are not entirely supported by the record. For example, the ALJ entirely failed to account for the Third Party Function Report the claimant submitted, which supports the claimant's complaints of pain. Social Security Ruling (SSR) 06-03p provides the relevant guidelines for the ALJ to follow in evaluating "other source" opinions from non-medical sources who have not seen the claimant in their professional capacity. *See* Soc. Sec. Rul. 06-03p, 2006 WL 2329939. SSR 06-03p states, in part, that other source opinion evidence, such as those from spouses, parents, friends, and neighbors, should be evaluated by considering the following factors: i) nature and extent of the relationship; ii) whether the evidence is consistent with other evidence; and iii) any other factors that tend to support or refute the evidence. Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *6. Here, the ALJ made no mention of the Third Party Function Report at all, and his written decision is therefore not clear that he considered this evidence in making his decision. "[T]he ALJ is not required to make specific written findings of credibility *only if* 'the written decision reflects that the ALJ considered the testimony,'" *Blea v. Barnhart*, 466 F.3d 903, 915 (10th Cir. 2006) [citation omitted] [emphasis added], and his failure to do so here is reversible error. *See Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) ("Without the benefit of the ALJ's findings supported by the weighing of this relevant evidence, we cannot determine

whether his conclusion . . . is itself supported by substantial evidence."). *See also Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989) ("[W]here the record on appeal is unclear as to whether the ALJ applied the appropriate standard by considering all the evidence before him, the proper remedy is reversal and remand.") [citation omitted].

Further, the ALJ's credibility analysis preceded the medical evidence and consisted of the following: "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 16). The problem with this analysis (apart from vagueness) is that the ALJ should have *first* evaluated the claimant's testimony (along with all the other evidence) according to the above guidelines *and only then* formulated an appropriate RFC, not the other way around, *i. e.,* the ALJ apparently judged the credibility of the claimant's testimony by comparing it to a pre-determined RFC. *See Bjornson v. Astrue*, 2012 WL 280736 at *4-5 (7th Cir. Jan. 31, 2012) (slip op.) (in addressing nearly identical language, "[T]he passage implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards. The administrative law judge based his conclusion that Bjornson can do sedentary work on his determination that she was exaggerating the severity of her headaches. Doubts about credibility were thus critical to his assessment of ability to work, yet the boilerplate implies that the determination of

credibility is deferred until ability to work is assessed without regard to credibility, even though it often can't be.").

"Because a credibility assessment requires consideration of all the factors in combination, when several of the factors *relied upon* by the ALJ are found to be unsupported or contradicted by the record, [the Court is] precluded from weighing the remaining factors to determine whether they, in themselves, are sufficient to support the credibility determination." *Bakalarski v. Apfel*, 1997 WL 748653 at *3 (10th Cir. Dec. 3, 1997) [unpublished opinion] [quotation and citations omitted]. Accordingly, the Commissioner's decision must be reversed and the case remanded to the ALJ for further analysis of the claimant's credibility. On remand, the ALJ should properly evaluate the third party witness statement in accordance with the factors set out in SSR 06-03p and *Blea*, then re-assess the claimant's credibility. If the ALJ's subsequent credibility analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 22nd day of March, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma